UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

| | |
|---|---|
| THOMAS A. MASSONE, individually, and on behalf of all similarly situated Court Security Officers employed to perform Court Security Services in and about the United States Courts under contract with the United States Marshals Service and in his capacity as President of the Unites States Court Security Officers' Union, | Verified Complaint in an Action For a Judgment Declaring that Persons Designated to act as Special Deputy United States Marshals and performing the duties of Court Security Officer in the Courts of the United States are in fact "Public Safety Officers" as that term is Defined in the Public Safety Officer Benefits Act [34 USC 10284 (8)] |
| Plaintiff, | |
| --against-- | |
| UNITED STATE DEPARTMENT OF JUSTICE; THE HONORABLE JEFF SESSIONS, in his capacity as Attorney General of the United States of America; UNITED STATES DEPARTMENT OF JUSTICE, OFFICE OF JUSTICE PROGRAMS; UNITED STATES DEPARTMENT OF JUSTICE, OFFICE OF JUSTICE PROGRAMS, BUREAU OF JUSTICE ASSISTANCE; and, UNITED STATES DEPARTMENT OF JUSTICE, OFFICE OF JUSTICE PROGRAMS, BUREAU OF JUSTICE ASSISTANCE, PUBLIC SAFETY OFFICERS' BENEFITS OFFICE, | Docket No.: |
| Defendants. | |

----------------------------------X

## VERIFIED COMPLAINT FOR DECLARATORY JUDGMENT

### Introduction:

Plaintiff, Court Security Officer Thomas A. Massone, individually, as President of the United States Court Officers Union, and on behalf of all similarly situated Court Security Officers employed to perform Court Security services in and about the Courtrooms and Courthouse Facilities of the United States Courts, pursuant to an employment contract by and between the United States Marshals Service and AKAL Security Corporation,[1] by and through their counsel, Pat Bonanno, Esq., brings this action for a Judgment of this Court declaring that persons designated to act as "Special Deputy United States Marshals" and performing Court

---

[1] In addition to Akal Security, the USMS contracts with four (4) other security companies, Inter Con Security; MVM Security; Walden Security and American Paragon Security to provide Court Security services.

Security Officer (CSO) duties in United States Courts and Courthouse Facilities are in fact "Public Safety Officers" as that term is defined in the Public Safety Officer Benefits Act [34 USC 10284 (8)].[2] Plaintiff complains against the named defendants, specifically insofar as the named defendants have determined that because plaintiffs – while acting pursuant to their duties as Special Deputy United States Marshals and providing Court Security Officer services – are not "serving a public agency in an official capacity" as that term is defined in Public Safety Officer Benefits Regulations at 28 C.F.R. § 32.3[3] This is based upon the defendants' erroneous determination that the acts and omissions of a Court Security Officer are not legally those of the agency which the CSO serves (The United States Marshals Service) because the agency does not legally recognize them as the acts and omissions of the United States Marshals Service.[4] In fact, in previous proceedings before the Public Safety Officers Benefits Office, the United States Marshals Service has specifically asserted that Court Security Officers are legally employees of the United States Marshals Service, and that while so acting, their acts and omissions are legally those of the agency, which the Marshals service has never denied.

---

[2] "public safety officer" means—

    (A) an individual serving a public agency in an official capacity, with or without compensation, as a law enforcement officer, as a firefighter, or as a chaplain;

[3] Official capacity—An individual serves a public agency in an official capacity only if—

(1) He is officially authorized, -recognized, or -designated (by such agency) as functionally within or -part of it; and

(2) His acts and omissions, while so serving, are legally those of such agency, which legally recognizes them as such (or, at a minimum, does not deny (or has not denied) them to be such).

[4] As a result of this erroneous determination, Special Deputy United States Marshals performing duties as Court Security Officers under the terms of the contract between the Marshals Service and AKAL, do not qualify for death or other benefits under the Public Safety Officers Benefits Act.

**Parties:**

1. Plaintiff THOMAS A. MASSONE is a United States Court Security Officer who is designated as a Special Deputy United States Marshal, and is a Member and the President of the United States Court Security Officer's Union. He is a citizen of the United States, a resident of the State of New York, and has a business address of 35 Market Street, Poughkeepsie, New York 12601.

2. Defendants United States of America and the Honorable Jeff Sessions, Attorney General of the United States and Department of Justice are sued here in their official capacities, and as the entity and chief executive officer, respectively, with supervisory authority over the subordinate defendants. The address is Department of Justice, 950 Pennsylvania Ave. NW, Washington, DC 20530-0001.

3. Defendants United States Department of Justice, Office of Justice Programs, Bureau of Justice Assistance, and, United States Department of Justice, Office of Justice Programs, Bureau of Justice Assistance, Public Safety Officers' Benefits Office, are sued here in their official capacities, and as the entities specifically charged by statute to interpret and administer the Public Safety Officers Benefits Act (the Act). Their address is U.S. Department of Justice, Office of Justice Programs, Bureau of Justice Assistance, Washington, DC 20531.

4. As noted above, Plaintiff brings this action for a judgment declaring that "Special Deputy United States Marshals" while in the course of performing their lawful and proper duties as Court Security Officers in United States Courts and Courthouse Facilities are in fact "Public Safety Officers" as that term is defined in the Public Safety Officer Benefits Act [34 U.S.C. 10284 (8)].

**Jurisdiction and Venue:**

5.  This Court has jurisdiction under the Public Safety Officers Benefits Act (34 U.S.C. § 10281, *et. seq.*), 28 U.S.C. § 1331 (Federal Question) and 28 U.S.C. § 2201 (Declaratory Judgment Act).

6.  Venue is appropriate in this jurisdiction because this is the district in which plaintiff and his Union maintain their principle place of business.

**Factual Allegations:**

7.  Since the inception of the Court Security Officer program, three Court Security Officers have given their lives in the performance of their duties. In each case, the Court Security Officer was designated as a Special Deputy United States Marshal, and was acting pursuant to his special duties in and about Courtroom and Court facilities of the United States Courts. The name of each of the three Court Security Officers killed in the line of duty appears on the United States Marshals Service Honor Roll. See, https://www.usmarshals.gov/history/roll_call.htm

8.  The first of these officers killed in the line of duty was Special Deputy United States Marshal Harry A. Belluomini. As set forth in the opinion of the United States Court of Appeals for the Seventh Circuit (No. 94-3864, decided August 28, 1995)(appended hereto as Exhibit 1), on July 20, 1992, Court Security Officer Belluomini was transporting a prisoner from the Dirksen Federal Building in Chicago, the prisoner managed to free himself from his handcuffs and steal the firearm of Deputy United States Marshal Roy Frakas. The prisoner then shot Belluomini, who was guarding the entrance to the garage. Mortally wounded, Court Security Officer Belluomini fired on the assailant, hitting him in the back. The mortally wounded assailant then shot and killed himself. Belluomini v. United States, 64 F.3d 299 (1995). See, https://www.odmp.org/officer/358-special-deputy-marshal-harry-a-belluomini

9.  By letter dated September 24, 1992, Mrs. Mildred A. Belluomini was notified that, under the provisions of the Public Safety Officers' Benefits Act of 1976, a payment was awarded to the eligible survivors of Special Deputy United States Marshal/Court Security Officer Harry A.

Belluomini. Exhibit 2, Letter of William F. Powers, dated September 24, 1992.

10.　　The essential necessary elements of the determination awarding benefits to the survivors of CSO Belluomini under the Act, was a determination that Special Deputy United States Marshal/Court Security Officer Harry A. Belluomini was a public safety officer, *i.e.*, one who was serving a public agency in an official capacity, *i.e.*, he was officially authorized, -recognized, or -designated (by such agency) as functionally within or -part of it; and his acts and omissions, while so serving, were legally those of such agency, which legally recognized them as such (or, at a minimum, does not deny [or has not denied] them to be such).

11.　　This determination was further buttressed by the determination of the United States Court of Appeals for the Seventh Circuit when it granted summary judgment against Mrs. Belluomini and in favor of the United States, finding that because Special Deputy United States Marshal/Court Security Officer Harry A. Belluomini was an "employee" of the United States Marshal Service, his coverage under the Illinois Workers Compensation program operated as a bar to any recovery under the Federal Tort Claims Act. This was notwithstanding the fact that Special Deputy United States Marshal/Court Security Officer Harry A. Belluomini was actually employed by a contractor[5] hired by the Marshals Service to provide Court Security Officers to assist in the protection of the federal judiciary. Belluomini v. United States, 64 F.3d 299 (1995).

12.　　The second of these officers killed in the line of duty was Special Deputy United States Marshal Gene L. Goldsberry. As set forth on the United States Marshals Service web site, CSO Goldsberry was killed on August 5, 1993. Research discloses that CSO Goldsberry was performing Court Security function on the Fourth Floor of the Topeka, Kansas Federal Courthouse when he was shot and killed by a defendant who was about to be sentenced upon a conviction for drug and weapons charges. As the elevator doors opened on the fourth floor, the suspect began firing, killing CSO Goldsberry and then killing himself when he exploded a pipe bomb. It is unknown whether a claim for benefits under the provisions of the Public Safety

---

[5] General Security Services Corporation was the contractor at the time of this tragic incident.

Officer's Benefits Act was either made or granted or denied. See, https://www.odmp.org/officer/537-special-deputy-marshal-gene-leroy-goldsberry

13. The third of these officers killed in the line of duty was Special Deputy United States Marshal Stanley W. Cooper. As set forth in the determination of PSOB Hearing Officer Douglas C. Dodge, dated August 4, 2015 (appended hereto as Exhibit 3), on January 4, 2010, Special Deputy United States Marshal Stanley W. Cooper was on duty at the Federal District Court in Las Vegas, Nevada, manning the front entrance of the courthouse and screening people entering the facility when an assailant armed with a shotgun entered the courthouse and shot and killed Special Deputy United States Marshal/Court Security Officer Cooper. The assailant was subsequently killed in a shoot-out with other marshals outside the courthouse. See, https://www.odmp.org/officer/20207-special-deputy-marshal-stanley-w-cooper

14. By letter dated September 1, 2015, Marshall James Cooper, one of the children of Special Deputy United Stated Marshal Stanley Cooper, was advised that his claim for benefits under the provisions of the Public Safety Officers' Benefits Act, was denied. Exhibit 4, Letter of Hope D. Janke dated September 1, 2015.

15. The determination of the hearing officer held that although it was established that the United States Marshals Service recognized Special Deputy United States Marshal/Court Security Officer Cooper as "functionally part of the agency" (thus establishing the first part of the definition of "official capacity") and the United States Marshals Service stated that Special Deputy United States Marshal/Court Security Officer Cooper's acts were legally attributable to the United States Marshal Service [which should have been sufficient to meet the second part of the definition of "official capacity" in that his acts and omissions, while so serving, are legally those of such agency, which legally recognizes them as such (or, at a minimum, does not deny [or has not denied] them to be such)]. However, the hearing officer went behind the agency assertion and determined (erroneously) that under the provisions of the contract between AKAL and the United States Marshals Service, under which Court Security Officers were hired by

AKAL to provide security services in the courthouse, the acts and omissions of the Court Security Officers could not be legally recognized as those of the agency because AKAL retained many rights as an employer under the contract.

16. It is clear that, in the process of contracting with AKAL for the provision of Court Security Officers, The United States and the United States Marshals Service, have apportioned to AKAL all of the bookkeeping and administrative function associated with the employee-employer relationship. Indeed, as noted by the Hearing Officer, AKAL "has the authority to hire and fire an employee." However, The Hearing Officer apparently misunderstood that the contract between the Marshals Service and AKAL also provides that deputation as a Special Deputy United States Marshal is necessary for employment as a Court Security Officer, and the United States Marshals Service can rescind a deputation and demand removal of a Court Security Officer, at any time and for any reason. Further, although the Hearing Officer noted that under the contract, AKAL provides the personnel and does all that is associated with administration, he fails to give proper weight to the fact that the United States Marshals Service establishes the security posts and manpower requirements. Finally, the hearing officer completely misses the mark when he concludes that "the placement of CSOs at the courthouse, the contractual statement of duties, issuance of a weapon, and weapon proficiency requirements do not alter the facts that the USMS did not directly supervise CSO Cooper, did not hire him, and could not remove him, and that these later factors are important to a finding that USMS was not responsible for the acts and omissions of CSO Cooper."

17. This, of course, completely ignores the reality of the employment situation of a Court Security Officer. He is, of course, in fact supervised by the Chief Deputy U.S. Marshal on duty in every United States Courthouse. He is under the further *de facto* supervision of every Circuit Court Judge, District Court Judge, Magistrate Judge, Hearing Officer, Assistant U.S. Attorney and any other employee in the United Stated Courthouse who will not hesitate to report any untoward behavior. And it can be assumed beyond peradventure that any such complaint will

not be directed to security contract provider, but rather, to the supervising Deputy U.S. Marshal, always remembering that the United States Marshals Service holds the ropes to the guillotine, *i.e.*, it can rescind deputation and demand removal.[6/7/8] Indeed, as set forth on the United States Marshals Service official government web site:

> The Office of Court Security (OCS) is the United States Marshals Service's preeminent expert on facility security. OCS ensures the protection of the federal judicial process through screening and protection at all federal court facilities. OCS activities ensure the day-to-day security of all those who participate in the federal judicial process, including members of the public. OCS is dedicated to this responsibility through strategic development, implementation, and enhancements of the nationwide Court Security Officer (CSO) program, which consists of more than 5,000 contractors. The CSO is typically the first line of interior defense for the "Third Branch" of the United States Government.

https://www.usmarshals.gov/judicial/index.html

---

[6] Further indicia of ultimate authority and control over the working conditions of the Court Security Officers can be found in several other sources. For example, on March 21, 2017, the United States Marshals Service, Judicial Security Division, noting that in each of the three cases of Court Security Officers killed in the line of duty, none were wearing body armor. Noting FBI statistics showing increased fatality rates for "law enforcement officers who do not wear body armor," mandates that all CSOs "will be required to wear body armor while performing duties under the contract. See, Exhibit 5, Memo from John O. Bolen dated March 21, 2017.

[7] In yet another example of direct supervision and control, the United States Marshals Service, in 2013, instituted a practice or policy in the Southern District of California of producing all in-custody prisoners in shackles for all non-jury appearances. This, of course, placed an additional duty on the Court Security Officers. See, United States v. Sanchez-Gomez, United States Court of Appeals for the Ninth Circuit, No. 13-50561, decided May 31, 2017 (en banc).

[8] Cases of allegations of rules violation by CSOs in the Southern District of New York are investigated not by AKAL, but by the Marshals Service, which then makes a recommend- ation to AKAL as to the appropriate penalty, ranging up to and including dismissal. Here, again, while the contract provides that AKAL does the actual firing (if appropriate) the Marshals Service reserves the right to demand removal from the CSO program. AKAL may then elect to retain the employee in some other division of the company, but it is most assuredly up to the United States Marshals Service as to whether the employee will remain a CSO. See, Exhibit 6, Safety Alert dated November, 2017, advising that negligent discharge of a firearm will result in an investigation that may lead to the officer concerned being removed from the contract.

18.     The apparent conflict in interpretation of the controlling statute and the regulations promulgated and set forth in the Code of Federal Regulations demand that this Court enter a Judgment declaring the respective rights of the parties under the statute. Such is essential so that Special Deputy United States Marshals/Court Security Officers can make an intelligent determination of whether or not they wish to continue such employment, should it be determined that their status will not allow their beneficiaries to make a claim under the Public Safety Officers Benefits Act.

**WHEREFORE**, plaintiff demands judgment against all defendants declaring that persons designated to act as "Special Deputy United States Marshals" and performing Court Security Officer duties in United States Courts and Courthouse Facilities are in fact "Public Safety Officers" as that term is defined in the Public Safety Officer Benefits Act [34 USC 10284 (8)], and such other and further relief as to this Court seems appropriate and proper under the circumstances.

Dated: White Plains, New York
       March 23, 2018

                                      Pat Bonanno & Associates, P. C.
                                      Attorneys for Plaintiff
                                      175 Main Street – Suite 507
                                      White Plains, New York 10601
                                      (914) 948-5545
                                      (866) 777-1418 (Fax)

                    By:    Pat Bonanno, Esq.

# VERIFICATION

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
THOMAS A. MASSONE, individually, and
on behalf of all similarly situated Court Security
Officers employed to perform Court Security
Services in and about the United States Courts
under contract with the United States Marshals
Service and in his capacity as President of the
Unites States Court Security Officers' Union,
        Plaintiff,

--against--

UNITED STATE DEPARTMENT OF JUSTICE;
THE HONORABLE JEFF SESSIONS, in his
capacity as Attorney General of the United   Docket No.:
States of America; UNITED STATES DEPARTMENT
OF JUSTICE, OFFICE OF JUSTICE PROGRAMS;
UNITED STATES DEPARTMENT OF JUSTICE,
OFFICE OF JUSTICE PROGRAMS, BUREAU OF
JUSTICE ASSISTANCE; and, UNITED STATES
DEPARTMENT OF JUSTICE, OFFICE OF JUSTICE
PROGRAMS, BUREAU OF JUSTICE ASSISTANCE,
PUBLIC SAFETY OFFICERS' BENEFITS OFFICE,
        Defendants.
----------------------------------X

STATE OF NEW YORK )
       ) SS:
COUNTY OF    )

  THOMAS A. MASSONE, being duly sworn deposes and says: that the deponent has read the foregoing Complaint and knows the contents thereof; that the said is true to deponent's own knowledge except as to the matters therein stated to be alleged upon information and belief and as to those matters deponent believes it to be true.

              _____
              THOMAS A. MASSONE (Plaintiff)

Sworn to before me on this
23rd day of March, 2018

_____
Notary Public

PATRICIA E. GUNN
Notary Public, State of New York
No. 01GU6101725
Qualified in Dutchess County
Commission Expires Nov 17, 20 19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
THOMAS A. MASSONE, individually, and
on behalf of all similarly situated Court Security
Officers employed to perform Court Security
Services in and about the United States Courts
under contract with the United States Marshals
Service and in his capacity as President of the
Unites States Court Security Officers' Union,

                  Plaintiff,

  –against–

UNITED STATE DEPARTMENT OF JUSTICE;
THE HONORABLE JEFF SESSIONS, in his
capacity as Attorney General of the United
States of America; UNITED STATES DEPARTMENT
OF JUSTICE, OFFICE OF JUSTICE PROGRAMS;
UNITED STATES DEPARTMENT OF JUSTICE,
OFFICE OF JUSTICE PROGRAMS, BUREAU OF
JUSTICE ASSISTANCE; and, UNITED STATES
DEPARTMENT OF JUSTICE, OFFICE OF JUSTICE
PROGRAMS, BUREAU OF JUSTICE ASSISTANCE,
PUBLIC SAFETY OFFICERS' BENEFITS OFFICE,

                  Defendants.
------------------------------X

Affidavit of MARSHALL JAMES COOPER in support of the Verified Complaint in an Action For a Judgment Declaring that Persons Designated to act as Special Deputy United States Marshals and performing the duties of Court Security Officer in the Courts of the United States are in fact "Public Safety Officers" as that term is Defined in the Public Safety Officer Benefits Act [34 USC 10284 (8)]

Docket No.:

      MARSHALL JAMES COOPER, first being duly sworn, deposes and says:

1.    I am the oldest son of Special Deputy United States Marshal/Court Security Officer Stanley Wayne Cooper. I am over the age of twenty-one years, I am a citizen of the United States and a resident of the State of Nevada.

2.    On January 4, 2010, my father, Court Security Officer Stanley Wayne Cooper was performing Court Security Officer duties at the front entrance of the Courthouse for the Federal District Court in Las Vegas, Nevada.

3. Court Security Officers such as my father, are provided pursuant to a contract between the United States Marshals Service and, as relevant to this case, AKAL Security, Inc. AKAL hires appropriately trained personnel for its security business and, assigns employees that it deems appropriate to serve as Court Security Officers. Those persons selected to serve as Court Security Officers undergo intensive training at the Federal Law Enforcement Training Center (FLETC) located in Glynco, Georgia and after successful completion are then designated Special Deputy United States Marshals.

4. Upon information and belief, while the persons assigned as CSOs remain employees of AKAL, The USMS retains final authority over the selection of CSOs, their assignments, the manner in which their duties are to be carried-out, etc. Further, the USMS retained the right, at any time, to demand the removal from CSO duties of any CSO deemed unsuitable for the assignment.

5. Pursuant to his duty assignment on January 4, 2010, my father was performing screening protocols of all persons entering the Courthouse facility. While performing his duties, an individual armed with a loaded shotgun entered the Courthouse and shot and killed my father.

6. On March 28, 2011, I commenced a claim for benefits under the provisions of the Public Safety Officers Benefits Act (34 U.S.C. § 10281, *et. seq.*) (Formerly codified at 42 U.S.C. § 3796, *et. seq.*).

7. By letter dated September 8, 2011, I was notified that my claim for benefits was denied.

8. In September of 2011, I requested a hearing before a Public Safety Officers Benefits Hearing Officer.

9. On June 14, 2012, a hearing was conducted before Public Safety Officers Benefits Hearing Officer Douglas C. Dodge.

10. By a Hearing Officer's Determination dated August 4, 2015, Hearing Officer Dodge DENIED the claim for benefits. After finding that my father was, at the time of his death, recognized by the United States Marshals Service as functionally a part of the Service, the denial of benefits was based upon a finding that, at the time of his death while in the performance of his security screening duties at the United States Courthouse and acting as the first line of defense protecting employees and lawful visitors from intruders bent on homicide, there was a deficiency of proof to establish that the United States Marshals Service was responsible for the "acts and omissions" of my father.

11. The Hearing Officer went on to conclude that:

> Although the [United States Marshals Service] stated that CSO Cooper's acts were legally attributable to the USMS, their position is undermined by the fact that the contract provides otherwise. Additionally, the USMS did not hire and could not directly fire CSO Cooper. AKAL, and not the USMS, was responsible for the direct physical supervision of CSO Cooper. Given these facts, I find that, under the Public Safety Officer's Benefits Act and Regulations, CSO Stanley W. Cooper was not a "public safety officer." Therefore, PSOB benefits should be and are hereby DENIED.

12. In performing his duties as a Special Deputy United States Marshal/Court Security Officer, my father took great solace in the fact that, should anything catastrophic happen to him while performing his duties, his family would be well taken care of as a result of the monetary benefits provided under the terms of the Public Safety Officer's Benefits Act. Moreover, up until the determination denying his family benefits under the Act, there was never a question, and it was never contemplated, that the over five thousand Special Deputy United States Marshals/Court Security Officers providing security at United States Court facilities nationwide would be held to be ineligible for benefits because their "Acts and Omissions" were not legally attributable to the United States Marshals Service. Indeed, contrary to the determination of

Hearing Officer Dodge, the USMS has always maintained that the actions of CSO's are attributable to the USMS.

13. Finally, it appears that Hearing Officer Dodge's determination flies in the face of the Decision, Order and Judgment of the United States Court of Appeals, Seventh Circuit, in the Belluomini case. There, the Court of Appeals concluded, albeit with a significant degree of regret, that CSO Belluomini's employer was not an "independent contractor" vis-à-vis the United States Marshals Service, because the USMS retained:

> [T]he responsibility for determining how security is provided in the federal building. This includes the authority to assign duties and stations to individual CSOs. Although [the contractor] provides a "Lead CSO" for on-site supervision, that officer essentially functions as a liaison between the CSOs and the Marshals Service. The Marshals Service trains and deputizes new CSOs and provides them with their badges and their weapons. [The contractor] cannot reduce or increase the number of CSOs on site without the Marshals Service's approval. The Marshals Service also retains the authority to discharge CSOs. These factors combine to undermine any claim that [the contractor] and the Marshals Service had a principal/independent contractor relationship.

Belluomini v. United States, 64 F.3d 299 (1995).

13. The men and women like my father Stanley Cooper, who put their lives on the line every day as Court Security Officers/Special Deputy United States Marshals, protecting the Court Houses and Court facilities of the United States as well as all persons who work within those court facilities and those who come peaceably to avail themselves of American justice, should be able to rest easily in the knowledge that – if called upon to give that last full measure of devotion to their duty – their children and loved ones will be well taken care of under the provisions of the Public Safety Officers Benefits Act. Indeed, they should not be marginalized in respect of their vocation as public safety officers by a hyper-technical reading of the definition of "Public Safety Officer" coupled with a fundamental misunderstanding of the parameters of the contractual relationship between the United States Marshal Service and the Court Security Officers' contract

provider.

14. In sum, in giving their lives in the service of Justice in the United States of America, Court Security Officers do not stop to first consider whether they qualify as "Public Safety Officers" under the terms of the Act or the regulations promulgated thereunder, rather they simply do what is needed to protect the public and the Courthouse family – Judges, Magistrate Judges, Prosecutors, Public Defenders, Law Clerks, and Attorneys -- in and about the United States Courthouses and facilities in which they serve.

WHEREFORE, IT IS RESPECTFULL REQUESTED that a Judgment of this Court be entered DECLARING that persons designated to act as "Special Deputy United States Marshals" and performing Court Security Officer duties in United States Courts and Courthouse Facilities are in fact "Public Safety Officers" as that term is defined in the Public Safety Officer Benefits Act [34 USC 10284 (8)].

Dated:     White Plains, New York
           April 5, 2018

                                                    Marshall James Cooper
                                                    Marshall James Cooper

Sworn to before me this 5
Day of April, 2018

_____
NOTARY PUBLIC