UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THOMAS A. MASSONE, *individually, on behalf of all similarly situated Court Security Officers employed to perform Court Security Services in and about the United States Courts under contract with the United States Marshals Service, and in his capacity as President of the United States Court Security Officers' Union*,

                                        Plaintiff,

                    v.

UNITED STATE DEPARTMENT OF JUSTICE, OFFICE OF JUSTICE PROGRAMS, *et al*.,

                                        Defendants.

No. 18-CV-4908 (KMK)

OPINION & ORDER

Appearances:

Pat Bonanno, Esq.
Pat Bonanno & Associates, P.C.
White Plains, NY
*Counsel for Plaintiff*

Danielle Judith Levine, Esq.
U.S. Attorney's Office, Southern District of New York
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

Thomas A. Massone ("Plaintiff"), in his individual capacity, as President of the United States Court Officers Union, and on behalf of all similarly situated Court Security Officers ("CSOs") employed to perform Court Security services in the United States Courts, brings this Action against Defendants, seeking a Declaratory Judgment, pursuant to 28 U.S.C. § 2201 (the

"Declaratory Judgment Act"), that all persons acting as "Special Deputy United States Marshals" and performing CSO duties qualify as "Public Safety Officers" as defined in the Public Safety Officer Benefits Act, 34 U.S.C. § 10281, *et seq.* (the "PSOB Act").  (*See* Am. Compl. (Dkt. No. 41).)[1]  Before the Court is Defendants' Motion To Dismiss (the "Motion"), pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6).  (*See* Not. of Mot. (Dkt. No. 43).)  For the reasons discussed below, the Motion is granted.

## I.  Background

### A.  Factual Background

The following facts are taken from Plaintiff's Amended Complaint and the exhibits incorporated therein.  Any factual allegations are assumed true for the purposes of this Motion. *See Sierra Club v. Con-Strux LLC*, 911 F.3d 85, 88 (2d Cir. 2018) (accepting "all factual allegations as true" for the purposes of a motion to dismiss and deeming a complaint to include "any written instrument attached to it as an exhibit" (citation and quotation marks omitted)). However, the Amended Complaint also includes a number of legal arguments that do not receive the same favorable treatment, even at the motion to dismiss stage.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[O]n a motion to dismiss, courts are not bound to accept as true a legal conclusion couched as a factual allegation." (citation and quotation marks omitted)); *Weinreb v. Xeros Bus. Servs., LLC Health & Welfare Plan*, 323 F. Supp. 3d 501, 510 (S.D.N.Y. 2018) (explaining that the principle of accepting factual allegations as true "is inapplicable to

---

[1] "Defendants" refers to the United States Department of Justice ("DOJ"); the DOJ's Office of Justice Programs ("OJP"); the OJP's Bureau of Justice Assistance ("BJA"); the BJA's Public Safety Officers Benefits Office ("PSOB Office"); and William P. Barr ("Barr"), in his capacity as Attorney General of the United States of America.  (*See generally* Am. Compl.; Dkt.)

legal conclusions, which, like the complaint's labels and conclusions, are disregarded" (citations and quotation marks omitted)), *appeal filed*, No. 18-2809 (2d Cir. Sept. 21, 2018).

Plaintiff is a CSO who is designated as a "Special Deputy United States Marshal," and is a member and President of the United States CSO's Union.  (Am. Compl. ¶ 1.)  Plaintiff alleges that, "[s]ince the inception of the [CSO] program," three CSOs have been killed while serving. (*Id*. ¶ 7.)

The first was Special Deputy United States Marshal Harry A. Belluomini ("Belluomini"), who was killed in July 1992 by a prisoner who managed to free himself during transport from a federal building in Chicago.  (*Id*. ¶ 8.)  In September 1992, Belluomini's wife was notified that a payment was awarded to Belluomini's "eligible survivors" pursuant to the PSOB Act.  (*Id*. ¶ 9.) Plaintiff alleges that the benefit was awarded pursuant to a determination that Belluomini was a "public safety officer, i.e., one who was serving a public agency in an official capacity, i.e., he was officially authorized, [] recognized, or []designated (by such agency) as functionally within or []part of it; and his acts and omissions, while so serving, were legally those of such agency . . . ."  (*Id*. ¶ 10 (italics omitted).)  Plaintiff claims that this finding was "further buttressed" by a subsequent decision by the Seventh Circuit, which explained that it considered Belluomini as an "employee" of the United States Marshal's Service, and therefore, his coverage under the Illinois Workers' Compensation barred recovery under the Federal Tort Claims Act ("FTCA").  (*Id*. ¶ 11.)

The second CSO alleged to have been killed while serving was Special Deputy United States Marshal Gene Goldsberry ("Goldsberry").  (*Id*. ¶ 12.)  Plaintiff alleges that it is "unknown whether a claim for benefits under the provisions of the [PSOB] Act was either [sic] made or granted or denied."  (*Id*.)

The third CSO alleged to have been killed while serving was Special Deputy United States Marshal Stanley Cooper ("Cooper").  (*Id.* ¶ 13.)  Cooper was allegedly shot while manning the entrance of the federal district court in Las Vegas, Nevada on January 4, 2010.  (*Id.*)  In September 2015, one of Cooper's children received a letter advising him that his claim for benefits under the PSOB Act was denied.  (*Id.* ¶ 14.)  The hearing officer determined that Cooper was "officially recognized as functionally a part of the USMS."  (Am. Compl. Ex. 3 ("Cooper PSOB Decision") 11 (Dkt. No. 41-3).)  However, the hearing officer noted that there was no language established by any contract that suggested that the United States Marshal's Service had an employer-employee relationship with Cooper.  (*Id.* at 12.)  The officer determined that AKAL Security ("AKAL"), a private company that contracted with the United States Marshal's Service to "provide the necessary personnel, management and supervision, administrative support, materials, supplies, office, and equipment not supplied by the government," (*id.* at 5), maintained so much material control over Cooper's employment that they "had direct physical supervisory responsibility over . . . Cooper," (*id.* at 13).  Therefore, the PSOB hearing officer concluded that, despite being "functionally" within the United States Marshal's Service, the United States Marshal's Service—by the terms of the contracts at issue—was not truly "responsible for [Cooper's] actions and omissions."  (*Id.* at 14 (quotation marks omitted).)  Therefore, according to the hearing officer, Cooper was not considered a "public safety officer," and his beneficiaries were not entitled to any benefit under the PSOB Act.  (*Id.* at 15.)

Plaintiff argues that the hearing officer's determination "completely ignores the reality of the employment situation of a" CSO, who is "in fact supervised by the Chief Deputy U.S. Marshal on duty in every United States Courthouse" and is subject to the "de facto" supervision of judges, hearing officers, government attorneys, and other employees within federal

courthouses who "will not hesitate to report any untoward behavior" to the CSOs on duty.  (Am.

Compl. ¶ 17 (italics omitted).)  Plaintiff also claims that the United States Marshal's Service

"can rescind deputation and demand removal," despite the fact that many CSOs are contractors

provided by private security companies.  (*Id*.)  Plaintiff provides some other "indicia of ultimate

authority and control" that the United States Marshal's Service exercises over a CSO's

employment: (1) the United States Marshal's Service issued a mandate in March 2017 requiring

all CSOs to wear body armor while performing contractual duties; (2) in 2013, the Southern

District of California required its in-custody prisoners to be produced in shackles for all non-jury

appearances, which allegedly "placed an additional duty" on the CSOs in that District; and (3)

any allegation of rules violation by CSOs is first investigated by the United States Marshal's

Service, which "makes a recommend[a]tion to AKAL as to the appropriate penalty, ranging up to

and including dismissal," and notwithstanding that AKAL "does the actual firing," the United

States Marshal's Service "reserves the right to demand removal from the CSO program."  (*See

id*. ¶ 17 n.6–8.)

Plaintiff alleges that the United States Marshal's Service continues to "affirm" to CSOs at

various training venues that CSOs are covered by the PSOB Act.  (*Id*. ¶ 19.)  Plaintiff argues that

there is an "apparent conflict" between the representations made to current and prospective

CSOs about the PSOB Act and the potential denial of benefits that they might face after being

disabled or killed.  (*Id*. ¶¶ 19–20.)  However, Plaintiff specifies that he is *not* seeking "to

overturn, modify, or otherwise affect the determination" regarding Cooper's benefits.  (*Id*. ¶ 21.)

Instead, Plaintiff asks this Court to determine "the respective rights of the parties going forward."

(*Id*.)

Based on the above, Plaintiff seeks a Declaratory Judgment that all persons designated as "Special Deputy United States Marshals" and performing CSO duties in United States courthouse and courthouse facilities are "public safety officers," as that term is defined in the PSOB Act.  (*Id.* at ECF 11.)

B.  Procedural Background

Plaintiff initiated this Action by filing a Complaint on June 3, 2018.  (*See* Compl. (Dkt. No. 1).)  In response to Defendants' Pre-motion Letter, the Court held a Pre-motion Conference and permitted Plaintiff to amend the Complaint.  (*See* Dkt. No. 38; Dkt. (minute entry for Oct. 8, 2019).)  At that conference, the Court also set forth a briefing schedule for any motion to dismiss the anticipated amended pleading, if Defendants wished to move.  (*See* Dkt. No. 38.)   Plaintiff filed the Amended Complaint on October 30, 2019.  (*See* Am. Compl.)

Defendants filed their Motion on December 12, 2019.  (*See* Not. of Mot.; *see also* Defs.' Mem. of Law in Supp. of Mot. ("Defs.' Mem."); Decl. of Hope D. Janke in Supp. of Mot. ("Janke Decl.") (Dkt. Nos. 44–45).)  Plaintiff submitted only an attorney Declaration to oppose the Motion.  (*See* Decl. of Pat Bonanno, Esq. in Opp'n to Mot. ("Pl.'s Opp'n") (Dkt. No. 46).)  Defendants filed their Reply on January 31, 2020.  (*See* Defs.' Reply in Supp. of Mot. ("Defs.' Reply") (Dkt. No. 47).)

II.  Discussion

Defendants argue that the Court does not have subject matter jurisdiction under Rule 12(b)(1) because Plaintiff lacks Article III standing, because sovereign immunity precludes jurisdiction over Plaintiff's claim, and because the PSOB Act vests jurisdiction for judicial review of any BJA determination exclusively in the Court of Appeals for the Federal Circuit.  (*See* Defs.' Mem. 6–15.)  Defendants also argue that, in any event, Plaintiff fails to state a claim

because the Declaratory Judgment Act does not create an independent cause of action.  (*See id.* at 15–16.)

A.  Standard of Review

1.  Rule 12(b)(1)

"A federal court has subject matter jurisdiction over a cause of action only when it has authority to adjudicate the cause pressed in the complaint." *Bryant v. Steele*, 25 F. Supp. 3d 233, 241 (E.D.N.Y. 2014) (citation and quotation marks omitted).  "Determining the existence of subject matter jurisdiction is a threshold inquiry[,] and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citation and quotation marks omitted); *see also United States v. Bond*, 762 F.3d 255, 263 (2d Cir. 2014) (describing subject matter jurisdiction as the "threshold question that must be resolved before proceeding to the merits" (citation, alteration, and quotation marks omitted)).

The Second Circuit has explained that a challenge to subject-matter jurisdiction pursuant to Rule 12(b)(1) may be facial or fact-based.  *See Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016).  When a defendant raises a facial challenge to standing based solely on the complaint and the documents attached to it, "the plaintiff has no evidentiary burden," and a court must determine whether the plaintiff asserting standing "alleges facts that affirmatively and plausibly suggest that the plaintiff has standing to sue." *Id.* (alterations and quotation marks omitted) (quoting *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011)). In making such a determination, a court must accept as true all allegations in the complaint and draw all inferences in the plaintiff's favor.  *See id.* at 57.  However, where a Rule 12(b)(1) motion is fact-based and a defendant proffers evidence outside the pleadings a plaintiff must either come

forward with controverting evidence or rest on the pleadings if the evidence offered by the

defendant is immaterial.  *See Katz v. Donna Karan Co.*, 872 F.3d 114, 119 (2d Cir. 2017).  If the

extrinsic evidence presented by the defendant is material and controverted, a court must make

findings of fact in aid of its decision as to standing.  *See Carter*, 822 F.3d at 57.  Here,

Defendants raise a facial challenge to standing.

### 2.  Rule 12(b)(6)

The Supreme Court has held that although a complaint "does not need detailed factual

allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his

entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (alteration and quotation

marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an

unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009) (quotation marks omitted).  "Nor does a complaint suffice if it tenders naked

assertions devoid of further factual enhancement."  *Id.* (alteration and quotation marks omitted).

Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the

speculative level."  *Twombly*, 550 U.S. at 555.  Although "once a claim has been stated

adequately, it may be supported by showing any set of facts consistent with the allegations in the

complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that

is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims across the

line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556

U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a

context-specific task that requires the reviewing court to draw on its judicial experience and

common sense.  But where the well-pleaded facts do not permit the court to infer more than the

mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In considering Defendants' Motion To Dismiss, the Court is required to "accept as true all of the factual allegations contained in the [C]omplaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (same).  The Court must also "draw[] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).  Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken."  *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks omitted).

B.  Analysis

1.  The PSOB Act

The PSOB Act, codified as amended at 34 U.S.C. § 10281, *et seq.*, provides for the payment of a one-time death and disability benefit to families of public safety officers who have died "as the direct and proximate result of a personal injury sustained in the line of duty" or who have become permanently and totally disabled as a result of such an injury.  34 U.S.C. §§ 10281(a), (b).  The PSOB Act defines a "public safety officer" as "an individual serving a public agency in an official capacity, with or without compensation, as a law enforcement

officer, as a firefighter, or as a chaplain." 34 U.S.C. § 10284(9)(A).  Applicable regulations

further specify that:

> an individual serves a public agency in an official capacity only if—
> (1) [the officer] is officially authorized, -recognized, or -designated (by such
> agency) as functionally within or -part of it; and (2) [the officer's] acts and
> omissions, while so serving, are legally those of such agency, which legally
> recognizes them as such (or, at a minimum, does not deny (or has not denied)
> them to be such).

28 C.F.R § 32.3.  Therefore, in order to be eligible for benefits under the PSOB Act, it must be

determined, in relevant part, that an individual was both functionally "a part of" the public

agency he or she served, and that his or her acts and omissions were legally attributable to that

agency.

Congress has authorized the BJA "to establish such rules, regulations, and procedures as

may be necessary to carry out the purposes" of the PSOB Act.  34 U.S.C. § 10285(a).  The BJA

has the authority to conduct investigations and make final determinations of whether a public

safety officer's injury qualifies for a payment of benefits under the Act.  *See* 34 U.S.C.

§§ 10281(a), (b).  The BJA has enacted a multi-step regulatory scheme for the issuance and

review of benefits disbursed pursuant to the PSOB Act.  First, potential beneficiaries must file a

claim with the PSOB Office.  *See* 28 C.F.R. §§ 32.12, 32.22.  Then, the claimant may request

review of a denial by a hearing officer.  *See id*. § 32.17.  The hearing officer will hold a hearing

that may include the presentation of evidence and fact or expert witnesses.  *See id*. § 32.45.  The

claimant may then request an appeal of a hearing officer's denial to the Director of the BJA.  *See*

*id*. § 32.46.  After the Director issues a determination, BJA's administrative scheme has been

exhausted, and a claimant may appeal a final decision of the BJA to the Court of Appeals for the

Federal Circuit.  *See id*. §§ 32.54–55; *see also* 34 U.S.C. § 10287.

2.  Plaintiff's Claim

"The jurisdiction of federal courts is defined and limited by Article III of the Constitution . . . [, and] the judicial power of federal courts is constitutionally restricted to 'cases' and 'controversies.'"  *Flast v. Cohen*, 392 U.S. 83, 94 (1968).  "[A]t [the] uncontroverted core [of the 'case or controversy' requirement] lies the principle that, at all times, the dispute before the court must be real and live, not feigned, academic, or conjectural."  *Russman v. Bd. of Educ. of Enlarged City Sch. Dist. of City of Watervliet*, 260 F.3d 114, 118 (2d Cir. 2001).  To meet that minimum constitutional threshold, Plaintiff must establish three things: "first, that [he] has sustained an injury in fact which is both concrete and particularized and actual or imminent; second, that the injury was in some sense caused by the opponent's action or omission; and finally, that a favorable resolution of the case is likely to redress the injury."  *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.à.r.l*, 790 F.3d 411, 417 (2d Cir. 2015) (citations and quotation marks omitted); *see also Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982) ("[Article] III requires the party who invokes the court's authority to show that he [or she] personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant." (citation and quotation marks omitted)); *Cooper v. U.S. Postal Serv.*, 577 F.3d 479, 489 (2d Cir. 2009) ("[T]here are three Article III standing requirements: (1) the plaintiff must have suffered an injury-in-fact; (2) there must be a causal connection between the injury and the conduct at issue; and (3) the injury must be likely to be redressed by a favorable decision." (citation, alteration, and quotation marks omitted)).

"Congress's authority to create new legal interests by statute, the invasion of which can support standing, is beyond question."  *Strubel v. Comenity Bank*, 842 F.3d 181, 188 (2d Cir.

2016) (citing *Warth v. Seldin*, 422 U.S. 490, 500 (1975)).  "However, even where Congress has codified a statutory right, a plaintiff must still allege that she has suffered a concrete and particularized injury connected to that interest."  *Bautz v. ARS Nat'l Servs., Inc.*, 226 F. Supp. 3d 131, 138 (E.D.N.Y. 2016) (citation omitted).  "In other words, the creation of a statutory interest does not vitiate Article III's standing requirements."  *Id.*  Applying the principles here, to the extent Plaintiff seeks to bring claims on behalf of CSO union members, he must show that "(a) [the union's] members would otherwise have standing to sue in their own right; (b) the interests [he] seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."  *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).

Defendants argue that Plaintiff has failed to allege the existence of any concrete or particularized injury on behalf of himself or any current member of the CSO union.  (*See* Defs.' Mem. 7–11.)  The Court agrees.  Plaintiff is explicit about the fact that he does not seek to relitigate the PSOB Office's findings as to Cooper, i.e., the one CSO who is alleged to have been killed while serving *and* denied PSOB Act benefits by the PSOB Office.  (*See* Am. Compl. ¶ 21; Pl.'s Opp'n ¶ 4.)  Although Plaintiff adopts this position to avoid the roadblock of the exclusive jurisdiction vested in the Court of Appeals for the Federal Circuit to review PSOB benefit determinations, *see* 34 U.S.C. § 10287, it also deprives the Amended Complaint of any live case or controversy.  Plaintiff does not allege that any current CSO has been disabled or killed while serving, has filed a PSOB Act claim, or has recently been denied any benefit.  (*See generally* Am. Compl.)  Instead, Plaintiff only seeks "clarification" that all the CSOs Plaintiff seeks to represent would qualify as a "public safety officer," as that term is defined in the PSOB Act. (*See id*. at ECF 11.)

Plaintiff points to the Cooper PSOB Decision to support the contention that, as a matter of practice, CSOs have been determined *not* to qualify for PSOB Act benefits.  (*See* Cooper PSOB Decision.)  However, that decision was quite fact intensive; it considered testimony from the "Technical Representative" of the United States Marshal's Service, (*id*. at 5), the "Vice President of Court Security Operations," (*id*. at 6), and an in-depth analysis of the contract that Cooper was subject to between AKAL Security and the United States Marshal's Service, (*id*. at 6–8).  Plaintiff's contention that this one interpretation and application of the PSOB Act—which Plaintiff himself acknowledges was not appealed for judicial review, (*see* Pl.'s Opp'n ¶ 4)—may deprive other, future CSOs and their beneficiaries from obtaining PSOB Act benefits is insufficient to establish Article III standing.  There is no reasonable certainty that *all* CSOs who Plaintiff seeks to represent would present similar evidence at a hearing or encounter similar agency determinations.  The existence of the Cooper PSOB Decision alone thus does not provide the necessary factual predicate to suggest that a similar outcome would reoccur with any measurable level of certainty.  *See Storms v. United States*, No. 13-CV-811, 2015 WL 1196592, at *26 (E.D.N.Y. Mar. 16, 2015) ("While past wrongs may be 'evidence bearing on whether there is a real and immediate threat of repeated injury, such evidence does not in itself show a present case or controversy regarding [declaratory] relief if unaccompanied by any continuing, present adverse effects.'" (alteration and some quotation marks omitted) (quoting *Pungitore v. Barber*, 506 F. App'x 40, 42 (2d Cir. 2012))); *see also Marshall v. N.Y. State Pub. High Sch. Athletic Ass'n, Inc.*, 374 F. Supp. 3d 276, 285 (W.D.N.Y. 2019) (explaining that a viable dispute must "admit of specific relief through a degree of conclusive character, as distinguished from *an opinion advising what the law would be upon a hypothetical state of facts*" (emphasis added) (citation, alteration, and quotation marks omitted)).  Reaching such a broad conclusion regarding

13

the eligibility of all CSOs, without any factual predicate for doing so, would usurp the role of the extensive administrative and judicial review that already exists for review of individual PSOB Act benefit claims.  *See* 28 C.F.R. §§ 32.17, 32.45–46, 32.54–55.  Indeed, Plaintiff alleges that, in a different case, CSO Belluomini's beneficiary was *successful* in obtaining an award under the PSOB Act, (*see* Am. Compl. ¶¶ 9–10), further highlighting the fact that without an actual potential PSOB Act claim at stake, any declaratory relief from this Court would be nothing but an advisory opinion about a hypothetical situation that may not arise again.

In response to Defendants' arguments regarding the lack of a live case or controversy, Plaintiff merely states that it is "a certainty that a CSO *will* be killed or injured or disabled in the line of duty."  (Pl.'s Opp'n ¶ 5 (emphasis added).)[2]  Even if true, this is precisely the type of "possible future injury" that is barred from resolution under Article III, and does not plausibly allege the existence of any "certainly impending" injury.  *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) (citations and quotation marks omitted); *see also Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) ("[T]hreatened injury must be *certainly impending* to constitute injury in fact, and . . . allegations of *possible* future injury are not sufficient." (emphases in original) (citation, alteration, and quotation marks omitted)).  The declaratory relief sought here seeks an impermissible "declaration of law," *Browning Debenture Holders' Comm. v. DASA Corp.*, 524 F.2d 811, 817 (2d Cir. 1975), and "does not carry any implications for practical enforcement upon the [P]arties," *S. Jackson & Son, Inc. v. Coffee, Sugar & Cocoa Exch. Inc.*, 24 F.3d 427, 429–30, 431 (2d Cir. 1994) (affirming district court's dismissal for lack of case of controversy where the plaintiff sought a declaration that, inter alia, certain activities were "inconsistent" with

---

[2] Plaintiff cites no cases in his Opposition at all, much less any case that would suggest that such a speculative injury may satisfy standing requirements under Article III.  (*See generally* Pl.'s Opp'n.)

the rules of a marketplace for the trading of future contracts); *see also Clapper*, 568 U.S. at 410–

11 (explaining that it is too "speculative" to assume that the Government would choose to take

certain surveillance action against the plaintiffs and that all built-in forms of review of that action

would fail, resulting in injury to the plaintiff).  And merely seeking a declaration "does not by

itself establish a case or controversy necessary to confer subject matter jurisdiction."  *S. Jackson

& Son, Inc.*, 24 F.3d at 431 (citing *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671–

72 (1950)).

   In reaching this legal conclusion, the Court does not seek to make light of the serious

risks which CSOs face in the course of their daily duties.  Indeed, it is deeply appreciative of the

security services that CSOs provide to federal judicial facilities around the country.  However,

the allegations present in the Amended Complaint are simply too speculative to establish a live

case or controversy, and pursuant to Article III, the Court is bound to dismiss the Action.  *See

Torres v. U.S. Dep't of State*, No. 18-CV-9555, 2020 WL 1489803, at *5 (S.D.N.Y. Mar. 27,

2020) (explaining that the petitioner's request that the court "certif[y]" that the petitioner had

been "persecuted" by the United States did not constitute a "live dispute" that could be resolved

by declaratory relief (citations, alterations, and quotation marks omitted)); *Bailey v. County of

Erie*, No. 09-CV-914, 2011 WL 4498774, at *2–3 (W.D.N.Y. Sept. 27, 2011) (finding that the

plaintiff lacked requisite standing to seek a declaration challenging the enforcement of probation-

related late fees where the authorities had "taken no steps" to collect those fees or to otherwise

apply the relevant local statutory provisions against the plaintiff, resulting in no actual or

imminent injury to the plaintiff); *Tamplenizza v. Josephthal & Co., Inc.*, 32 F. Supp. 2d 702, 704

(S.D.N.Y. 1999) (finding that the court did not have subject matter jurisdiction to issue a

declaratory judgment "advising [the plaintiff] of his right to choose the forum in which he may

or may not bring a suit" where the plaintiff failed to allege that "he or any other securities customer has brought such claims in federal court or any other forum, or plans to do so in the immediate future"); *see also HealthNow N.Y. Inc v. New York*, 448 F. App'x 79, 81 (2d Cir. 2011) (explaining that allegations that the state attorney general would use a specific law to investigate the plaintiff's practices, without more, were too "prospective" to present a "real, immediate, and direct" injury (citation and quotation marks omitted)).[3]

---

[3] Moreover, even if a case or controversy existed, the Court also notes that it is unlikely that Plaintiff would be able to circumvent the explicitly exclusive jurisdiction granted to the Federal Circuit to review issues relating to the PSOB Act. (*See* Defs.' Mem. 12–15.) Generally, "[i]f a special statutory review scheme exists, . . . it is ordinarily supposed that Congress intended that procedure to be the exclusive means of obtaining judicial review in those cases to which it applies." *Jarkesy v. Sec. & Exchg. Comm'n*, 803 F.3d 9, 15 (D.C. Cir. 2015) (citation and quotation marks omitted). As previously discussed, an extensive administrative scheme for appeals of PSOB benefits determinations exists, which culminates in judicial review by exclusively the Federal Circuit. *See* 34 U.S.C. § 10287; *Moore v. Dep't of Justice*, 760 F.3d 1369, 1372 (Fed. Cir. 2014) (explaining that the court had jurisdiction to review a final determination of the BJA based on 42 U.S.C. § 3796c-2, currently codified as 34 U.S.C. § 10287); *see also Li v. Dep't of Justice*, 947 F.3d 804, 807 (Fed. Cir. 2020) (same); *Donatello v. County of Niagara*, No. 15-CV-39, 2016 WL 3090552, at *5 (W.D.N.Y. June 2, 2016) ("Congress has designated the Court of Appeals for the Federal Circuit as the court with the exclusive power to review administrative decisions concerning public safety officer death benefits." (citation omitted)).

It is true that Plaintiff's claim here is distinct in that Plaintiff does not seek to appeal an actual BJA determination. However, in *Thunder Basin Coal Company v. Reich*, 510 U.S. 200 (1994), the Supreme Court considered whether the statutory review scheme laid out in the Federal Mine Safety and Health Amendments Act of 1977, 30 U.S.C. § 801, *et seq.* (the "Mine Act"), excluded district courts from exercising subject-matter jurisdiction over pre-enforcement challenges. *See* 510 U.S. at 202. The Mine Act designated the federal courts of appeals to have exclusive jurisdiction over challenges to Federal Mine Safety and Health Review Commission's decisions on post-enforcement claims, but was silent as to how *pre*-enforcement claims should be handled. *See id.* at 207–08. The Court determined, based on legislative history and the structure of the Mine Act—namely, its failure to distinguish between pre-enforcement and post-enforcement challenges—that Congress intended for the courts of appeals to also have exclusive jurisdiction over pre-enforcement challenges. *See id.* at 208–09. Therefore, the district court did not have subject matter jurisdiction over the claim for pre-enforcement injunctive relief. *See id.* at 218.

The PSOB Act, like the Mine Act, fails to distinguish between pre-claim and post-claim challenges. It also clearly streamlines challenges of agency determinations into a single review

Plaintiff has failed to state a viable underlying claim.  The Declaratory Judgment Act is "procedural only, and does not create an independent cause of action."  *Chevron Corp. v. Naranjo*, 667 F.3d 232, 244–45 (2d Cir. 2012) (citations and quotation marks omitted).  Because Plaintiff does not have a "substantive claim of right to [any form of] relief," the Court cannot "enter a declaratory judgment in favor of" Plaintiff.  *In re Joint E. & S. Dist. Asbestos Litig.*, 14 F.3d 726, 731 (2d Cir. 1993).

### III.  Conclusion[4]

For the foregoing reasons, Defendants' Motion To Dismiss is granted.  Given that Plaintiff is counseled and has already had the opportunity to amend in the face of similar arguments from Defendants, (*see* Dkt. No. 34), the Amended Complaint is dismissed with prejudice.

---

process.  By this reasoning, it may be extrapolated that Congress intended for pre-claim or extra-claim challenges involving the PSOB Act to be heard exclusively by the Federal Circuit as well. Therefore, this Court likely lacks subject matter jurisdiction on this ground as well.  *See Chau v. U.S. Sec. & Exch. Comm'n*, 72 F. Supp. 3d 417, 425–26 (S.D.N.Y. 2014) (explaining that a district court's "jurisdiction is not an escape hatch for litigants to delay or derail an administrative action when statutory channels of review are entirely adequate" where the plaintiffs sought "pre-enforcement relief from the SEC," thereby circumventing "the statutory review scheme governing SEC adjudications"), *aff'd*, 665 F. App'x 67 (2d Cir. 2016).

[4] Because the Court has dismissed the Amended Complaint for failure to present a live case or controversy, it does not address Defendants' sovereign immunity argument.  (*See* Defs.' Mem. 11–12.)

The Clerk of Court is respectfully directed to terminate the pending Motion, (Dkt. No. 43), and close this case.

SO ORDERED.

DATED:     June 4, 2020
             White Plains, New York

                                                     KENNETH M. KARAS
                                                     UNITED STATES DISTRICT JUDGE